# United States District Court

**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| SHOES BY FIREBUG LLC | § | |
| | § | |
| v. | § | Civil Action No. 4:16-CV-00899 |
| | § | Judge Mazzant |
| STRIDE RITE CHILDREN'S GROUP, LLC | § | |
| | § | |
| | § | |
| | § | |

## CLAIM CONSTRUCTION MEMORANDUM OPINION AND ORDER

Before the Court are Plaintiff Shoes by Firebug LLC's ("Firebug") Opening Claim Construction Brief (Dkt. #40), Defendant Stride Rite Children's Group, LLC's ("Stride Rite") Responsive Claim Construction Brief (Dkt. #46), and Plaintiff's Reply Claim Construction Brief (Dkt. #47). Also before the Court are the parties' September 26, 2017 P.R. 4-3 Joint Claim Construction and Prehearing Statement (Dkt. #32) and the parties' November 21, 2017 P.R. 4-5(d) Joint Claim Construction Chart (Dkt. #48). Further before the Court is Defendant's Supplemental Brief in Support of its Responsive Claim Construction Brief (Dkt. #55). The Court held a claim construction hearing on December 1, 2017, to determine the proper construction of the disputed claim terms in United States Patents Nos. 8,992,038 ("the '038 Patent") and 9,301,574 ("the '574 Patent").

The Court issues this Claim Construction Memorandum Opinion and Order and hereby incorporates-by-reference the claim construction hearing and transcript as well as the demonstrative slides presented by the parties during the hearing. For the following reasons, the Court provides the constructions set forth below.

# BACKGROUND

Plaintiff brings suit alleging infringement of United States Patents Nos. 8,992,038 and 9,301,574. The '038 Patent, issued on March 31, 2015, and the '574 Patent, issued on April 5, 2016, both bear an earliest priority date of December 28, 2012. The '574 Patent is a continuation of the '038 Patent, and both patents-in-suit are titled "Internally Illuminated Light Diffusing Footwear." The Abstract of the '038 Patent, for example, states:

> An illumination system is housed in a footwear, the footwear including a sole and an upper. A structure and a liner form inner layers connected to the upper. A plurality of illumination sources are electrically connected to a power source and positioned adjacent to the liner. The illumination sources are positioned between the liner and upper. A batting is designed to be light diffusing, while the upper has a light diffusing section. The light emitted from the plurality of illumination sources is diffused as it passes through the batting and light diffusing section. Aesthetic designs can be creating [*sic*, created], either through the arrangement of the plurality of illumination sources or the provision of a light impermeable section on the upper. The light impermeable section, in combination with the light diffusion section, can be used to form or outline an aesthetic design. The result is an internally illuminated footwear with diffused light.

Plaintiff asserts Claims 1, 5, 8, and 9 of the '038 Patent and Claims 1, 5, 8, and 9 of the '574 Patent (Dkt. #40 at p. 1).

## LEGAL STANDARDS

Claim construction is a matter of law. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995). The purpose of claim construction is to resolve the meanings and technical scope of claim terms. *U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir. 1997). When the parties dispute the scope of a claim term, "it is the court's duty to resolve it." *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1362 (Fed. Cir. 2008).

"It is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude.'" *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (quoting *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d

1111, 1115 (Fed. Cir. 2004)).  The Court examines a patent's intrinsic evidence to define the patented invention's scope.  *Id.* at 1313–14; *Bell Atl. Network Servs., Inc. v. Covad Commc'ns Group, Inc.*, 262 F.3d 1258, 1267 (Fed. Cir. 2001).  Intrinsic evidence includes the claims, the rest of the specification, and the prosecution history.  *Phillips*, 415 F.3d at 1312–13; *Bell Atl. Network Servs.*, 262 F.3d at 1267.  The Court gives claim terms their ordinary and customary meaning as understood by one of ordinary skill in the art at the time of the invention.  *Phillips*, 415 F.3d at 1312–13; *Alloc, Inc. v. Int'l Trade Comm'n*, 342 F.3d 1361, 1368 (Fed. Cir. 2003).

Claim language guides the Court's construction of claim terms.  *Phillips*, 415 F.3d at 1314.  "[T]he context in which a term is used in the asserted claim can be highly instructive."  *Id.*  Other claims, asserted and unasserted, can provide additional instruction because "terms are normally used consistently throughout the patent."  *Id.*  Differences among claims, such as additional limitations in dependent claims, can provide further guidance.  *Id.*

"[C]laims 'must be read in view of the specification, of which they are a part.'"  *Id.* at 1315 (quoting *Markman*, 52 F.3d at 979).  "[T]he specification 'is always highly relevant to the claim construction analysis.  Usually, it is dispositive; it is the single best guide to the meaning of a disputed term.'"  *Id.* (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)); *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1325 (Fed. Cir. 2002).  In the specification, a patentee may define his own terms, give a claim term a different meaning than it would otherwise possess, or disclaim or disavow some claim scope.  *Phillips*, 415 F.3d at 1316.  Although the Court generally presumes terms possess their ordinary meaning, this presumption can be overcome by statements of clear disclaimer.  *See SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.*, 242 F.3d 1337, 1343–44 (Fed. Cir. 2001).  This presumption does not

arise when the patentee acts as his own lexicographer. *See Irdeto Access, Inc. v. EchoStar Satellite Corp.*, 383 F.3d 1295, 1301 (Fed. Cir. 2004).

The specification may also resolve ambiguous claim terms "where the ordinary and accustomed meaning of the words used in the claims lack sufficient clarity to permit the scope of the claim to be ascertained from the words alone." *Teleflex*, 299 F.3d at 1325. For example, "[a] claim interpretation that excludes a preferred embodiment from the scope of the claim 'is rarely, if ever, correct.'" *Globetrotter Software, Inc. v. Elan Computer Group Inc.*, 362 F.3d 1367, 1381 (Fed. Cir. 2004) (quoting *Vitronics*, 90 F.3d at 1583). But, "[a]lthough the specification may aid the court in interpreting the meaning of disputed language in the claims, particular embodiments and examples appearing in the specification will not generally be read into the claims." *Constant v. Advanced Micro-Devices, Inc.*, 848 F.2d 1560, 1571 (Fed. Cir. 1988); *accord Phillips*, 415 F.3d at 1323.

The prosecution history is another tool to supply the proper context for claim construction because a patentee may define a term during prosecution of the patent. *Home Diagnostics Inc. v. LifeScan, Inc.*, 381 F.3d 1352, 1356 (Fed. Cir. 2004) (stating "[a]s in the case of the specification, a patent applicant may define a term in prosecuting a patent"). The well-established doctrine of prosecution disclaimer "preclud[es] patentees from recapturing through claim interpretation specific meanings disclaimed during prosecution." *Omega Eng'g Inc. v. Raytek Corp.*, 334 F.3d 1314, 1323 (Fed. Cir. 2003). "Indeed, by distinguishing the claimed invention over the prior art, an applicant is indicating what the claims do not cover." *Spectrum Int'l v. Sterilite Corp.*, 164 F.3d 1372, 1378–79 (Fed. Cir. 1988) (quotations omitted). "As a basic principle of claim interpretation, prosecution disclaimer promotes the public notice function of the intrinsic evidence and protects the public's reliance on definitive statements made during prosecution." *Omega Eng'g*, 334 F.3d

at 1324. However, the prosecution history must show that the patentee clearly and unambiguously disclaimed or disavowed the proposed interpretation during prosecution to obtain claim allowance. *Middleton Inc. v. 3M Co.*, 311 F.3d 1384, 1388 (Fed. Cir. 2002). Statements will constitute disclaimer of scope only if they are "clear and unmistakable statements of disavowal." *See Cordis Corp. v. Medtronic AVE, Inc.*, 339 F.3d 1352, 1358 (Fed. Cir. 2003). An "ambiguous disavowal" will not suffice. *Schindler Elevator Corp. v. Otis Elevator Co.*, 593 F.3d 1275, 1285 (Fed. Cir. 2010) (citations omitted).

Although "less significant than the intrinsic record in determining the legally operative meaning of claim language," the Court may rely on extrinsic evidence to "shed useful light on the relevant art." *Phillips*, 415 F.3d at 1317 (quotations omitted). Technical dictionaries and treatises may help the Court understand the underlying technology and the manner in which one skilled in the art might use claim terms, but such sources may also provide overly broad definitions or may not be indicative of how terms are used in the patent. *Id.* at 1318. Similarly, expert testimony may aid the Court in determining the particular meaning of a term in the pertinent field, but "conclusory, unsupported assertions by experts as to the definition of a claim term are not useful." *Id.* Generally, extrinsic evidence is "less reliable than the patent and its prosecution history in determining how to read claim terms." *Id.*

## ANALYSIS

### *Agreed Claim Terms*

The parties submitted the following agreements in their September 26, 2017 P.R. 4-3 Joint Claim Construction and Prehearing Statement (Dkt. #32), their briefing, and their November 21, 2017 P.R. 4-5(d) Joint Claim Construction Chart, and the Court hereby adopts these agreements:

| Term | Agreed Construction |
|------|---------------------|
| "interfacing layer"<br><br>('038 Patent, Cl. 1; '574 Patent, Cl. 1) | "reflective layer to which illumination sources are connected" |
| "liner"<br><br>('038 Patent, Cl. 1; '574 Patent, Cl. 1) | "one or more layers closest to the foot in the interior of the footwear above the sole" |
| "light diffusing section"<br><br>('038 Patent, Cl. 9; '574 Patent, Cls. 1, 9) | "a section that causes light to be spread out and that hides a plurality of illumination sources without blocking all light produced by the plurality of illumination sources" |
| "upper"<br><br>('038 Patent, Cls. 1, 8; '574 Patent, Cls. 1, 8) | "the exterior layer(s) of a footwear above the sole" |

(Dkt. #32 at Exhibit A; Dkt. #40 at p. 2; Dkt. #46 at p. 2; Dkt. #48 at Exhibit A).

*Disputed Claim Terms*

**A. "adjacently connected to" ('038 Patent, Claim 1; '574 Patent, Claim 1)**

| Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|------------------------------------|-------------------------------------|
| "directly connected to" | "next to and contacting" |

(Dkt. #32, App'x B at p. 6; Dkt. #40 at p. 4; Dkt. #46 at p. 12; Dkt. #48 at Exhibit A).

**1. The Parties' Positions**

Plaintiff argues that "Defendants . . . ask this Court to altogether remove the 'connected to' requirement of 'adjacently connected to' so that any two items next to and contacting one another within a footwear can satisfy the 'adjacently connected to' limitation and read on the asserted claims." (Dkt. #40 at p. 4). With reference to Claim 1 of the '038 Patent, for example, Plaintiff argues: "In the first limitation, the applicant uses 'between' to describe the relative positions of the structure, the liner, and the upper; whereas in the second limitation, the applicant uses 'adjacently connected to' to further require a connection between the structure and the upper." (Dkt. #40 at

p. 5).  Plaintiff also submits that "the specifications of both Patents-in-Suit describe how illumination sources are connected to the interfacing layer and the purpose of the claimed interfacing layer."  (Dkt. #40 at p. 7).  Further, Plaintiff cites prosecution history (Dkt. #40 at pp. 7–9)

Defendant responds that "[i]n accordance with an ordinary and customary meaning, 'adjacently connected to' simply describes the position of one element as next to and contacting another element, but not requiring actual attachment."  (Dkt. #46 at p. 12).  Defendant urges that "no portion of the intrinsic record supports the notion that a connection requires more than contact between two elements."  (Dkt. #46 at p. 14).  As to distinguishing between "connected to" and "adjacently connected to," Defendant argues that its proposal "addresses this distinction by requiring adjacently connected elements to be not only direct/indirectly *contacting* ('connected to') each other but also *next to and contacting* ('adjacently connected to') each other, *i.e.*, the absence of an intermediate object connecting the two elements."  (Dkt. #46 at p. 15).

Plaintiff replies that "Defendants' proposed construction completely ignores the prosecution history, in which two items that are *adjacently connected to* each other are described as being *directly connected* to each other."  (Dkt. #47 at p. 1) (emphasis in original).

At the December 1, 2017 hearing, the parties presented oral arguments, such as noted herein.

## 2.  Analysis

Claim 1 of the '038 Patent, for example, recites the term "adjacently connected to" and, as Plaintiff pointed out, also recites the phrases "positioned between" and "positioned adjacent to" (emphasis added):

> 1.  An internally illuminated textile footwear comprises:
>     a footwear;

the footwear comprises a sole and an upper;
an illumination system;
the illumination system comprises a power source and a plurality of illumination sources;
a liner;
a structure;
the structure comprises an interfacing layer and a batting;
the structure being *adjacently connected to* the upper;
the structure being *positioned between* the liner and the upper;
the interfacing layer being *positioned adjacent to* the liner;
the batting being *adjacently connected to* the interfacing layer opposite the liner;
the interfacing layer being reflective;
the batting being light diffusing;
the plurality of illumination sources being *adjacently connected to* the interfacing layer;
the plurality of illumination sources being *positioned between* the interfacing layer and the batting;
the upper being perimetrically connected to the sole;
the liner being positioned interior to the upper;
the upper being light diffusing;
the illumination system being housed within the footwear;
the plurality of illumination sources emitting light, wherein the light first entering the batting and being diffused by the batting, the light diffused by batting exits the batting, enters the upper, diffused again by the upper and then exits the upper, the twice diffused light creating a visual impression of internal radiant illumination across an outer surface area of the upper.

Thus, this claim provides a contrast between, for example, "positioned between" and "connected to." "[T]he use of both terms in close proximity in the same claim gives rise to an inference that a different meaning should be assigned to each." *See Bancorp Servs., L.L.C. v. Hartford Life Ins. Co.*, 359 F.3d 1367, 1373 (Fed. Cir. 2004). Nonetheless, the context provided by surrounding claim language, by itself, does not resolve the parties' dispute.

The specification sheds light on the meaning of "connected" by disclosing a "connection point" for illumination sources:

The interfacing layer 9 is a reflective layer that serves as a *connection point* for the plurality of illumination sources 6, that are *adjacently connected to* the interfacing layer 9 opposite the liner 7.

* * *

The interfacing layer 9, used in the art to provide *structural* reinforcement, is also beneficial as it adds virtually no bulk or weight to the present invention while reducing the difficulty of and increasing the efficiency of the manufacturing process as it relates to the *installation* of illumination sources 6. . . . Any appropriate method of *connection* can be used to *secure* the plurality of illumination sources 6 to the interfacing layer 9. For example, the plurality of illumination sources 6 can be *glued or stitched* to the interfacing layer 9.

'038 Patent at 2:65–3:1 & 3:11–25 (emphasis added). This disclosure that "connection" can be used to "secure" the illumination sources weighs against Defendants' proposal of merely "contacting."

Likewise, during prosecution, the patentee distinguished the "Doerer" reference, United States Patent Application Publication No. 2006/0262517 (attached to Plaintiff's reply brief as Exhibit B):

. . . Doerer teaches the upper 14 contains apertures in panels of the vamp 34 and in the quarters 36 that open outwardly, that is in the region of the vamp 34 and the quarter 36 that lie along the outside of the user's foot. The liner 46 lies behind each of the apertures, so the interior of the shoe A is not exposed through the apertures. The illuminating devices 15-20 and 16'-20' fit into the space between the liner 46 and the vamp 34 or quarter so that the illuminating portion of the devices 15-20 and 16'-20' extend through the apertures to be visible on the outside of the shoe A. The apertures thus allow the illuminating devices to be inserted through the upper 14.

Accordingly, Applicant respectfully notes that Doerer fails to disclose an upper 14, which is comprised of a multilayer construction consisting of a liner, a upper and a structure, the structure of which consists of a interfacing layer and a light defusing [*sic*, diffusing] batting, by which the illumination source is positioned internally (i.e. concealed) between the interfacing layer and light defusing [*sic*, diffusing] batting while being *directly connected* to the interfacing layer. In contrast, Doerer teaches that upper 14, contains apertures which allow the illuminating devices 15-20 to be inserted through the upper 14, and that the liner 46 lies behind each of the apertures, so the interior of the shoe A is not exposed through the apertures.

(Dkt. #40, Exhibit D, Aug. 1, 2014 Amendments at p. 20 (p. 58 of 149 of Exhibit D) (emphasis added)). This prosecution history is thus consistent with Plaintiff's proposal of "directly." At the

December 1, 2017 hearing, Plaintiff was amenable to construing the disputed term to mean "directly secured to."

Defendant has cited *Deere & Co. v. Bush Hog, LLC*, in which the Court of Appeals for the Federal Circuit distinguished between "secured" and "connected," finding that "[o]bjects that are secured to one another are not just connected, but are fastened or attached in some way." 703 F.3d 1349, 1354 (Fed. Cir. 2012). This discussion of particular terms in *Deere*, however, involved a different patent and different disputed terms and therefore is not necessarily applicable here. *Cf. Harari v. Lee*, 656 F.3d 1331, 1341 (Fed. Cir. 2011) (holding "*Baldwin*, however, does not set a hard and fast rule that 'a' always means one or more than one. Instead, we read the limitation in light of the claim and specification to discern its meaning.") (discussing *Baldwin Graphic Sys., Inc. v. Siebert, Inc.*, 512 F.3d 1338, 1342 (Fed. Cir. 2008)). Of particular note, the cited portion of *Deere* distinguished the term "secured to" from the term "engagement," finding that a motor and a gear could be "engaged" with one another despite the presence of an intermediate gear and despite not being "secured" together such as by welding or fastening. *See Deere*, 703 F.3d at 1354.

Defendant has failed to show how this context of connections between gears is analogous to the context of the present patents-in-suit, which involve layers of footwear. At the December 1, 2017 hearing, Defendant submitted that the significant point from *Deere* is merely that "connected" and "secured" can have different meanings. Still, the Court finds that *Deere* is not analogous and is of minimal, if any, relevance to the present dispute.

Defendants urge that their proposal is consistent with the distinction in above-reproduced Claim 1 of the '038 Patent between "positioned between" and "adjacently connected to" because the latter requires that there is no intermediate object, such that the two "adjacently connected" elements are next to and contacting each other. (*See* Dkt. #46 at pp. 16–17). This argument is

unpersuasive because it fails to give adequate meaning to "connected," such as set forth in the above-quoted disclosure that refers to "connection" in terms of "secur[ing]." '038 Patent at 3:22-24. Although Defendants have cited examples of structures that are disclosed as "adjacently connected," none of those disclosures demonstrates that "connected" refers to something other than structures being secured to one another. *See* '038 Patent at 2:65–3:1, 6:49–51, 6:63–66 & Fig. 6E. The same is true as to Defendant's cited disclosures of "adjacent to." *See* '038 Patent at 4:12–14, 6:7–10 & Fig. 12.

As to extrinsic evidence, Defendants have cited a general-purpose dictionary that defines "adjacent" as "next to or adjoining something else" and that defines "connect" as "bring together or into contact so that a real or notional link is established." (Dkt. #46, Exhibit K, *The New American Oxford Dictionary* 20 (2001); Dkt. #46, Exhibit L, *The New American Oxford Dictionary* 364 (2001)). Defendants have not shown how this definition of "connect" is applicable in the context of the patents-in-suit, and this reference to a "link" actually appears to weigh at least somewhat *against* Defendant's proposal of requiring merely "contacting." Also, Plaintiff has submitted a general-purpose dictionary and thesaurus that defines "connect" as "join" and that lists "secure" as a synonym (Dkt. #47, Exhibit A, *The Oxford American Dictionary and Thesaurus* 296–97 (2003)).

Further, Defendant's expert has not demonstrated that terms such as "connected" or "adjacently connected to" had any well-established technical meaning in the relevant art. (*See* Dkt. #46, Exhibit C, Nov. 10, 2017 Holden Decl. at ¶¶ 19–26). Defendant's expert's conclusion that "adjacently connected to" means "next to and contacting" is unpersuasive. *See Phillips*, 415 F.3d at 1318 (finding "conclusory, unsupported assertions by experts as to the definition of a claim term are not useful to a court").

Finally, Defendant's proposal of interpreting "connected" as meaning "contacting" is not only too broad (by not requiring attachment, as discussed above) but is also too narrow because layers might be found to *not* be "contacting" one another if they are separated by, for example, a glue that secures them to one another. In fact, the specification explicitly refers to glue as an example of securing layers to one another. *See* '038 Patent at 3:24–25. Defendant nonetheless expressed concern, at the December 1, 2017 hearing, that the word "directly" might be unclear, and Defendant suggested "next to and secured to" as a possible alternative construction. On balance, the context provided by the claim and the above-discussed portions of the specification and the prosecution history are sufficiently clear; phrases such as "adjacently connected" or "directly connected" refer to the absence of any intervening layer (rather than necessarily the absence of anything at all, such as a glue). (*See* '038 Patent; *see also* Dkt. #40, Exhibit D, Aug. 1, 2014 Amendments at p. 20 (p. 58 of 149 of Exhibit D)).

Based on the foregoing intrinsic evidence, particularly the specification and the prosecution history, as reinforced by extrinsic evidence, the Court hereby construes **"adjacently connected to"** to mean **"directly secured to."**

### B. "batting" ('038 Patent, Claim 1)

| Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|
| "a layer that diffuses light" | "fiber wadding" |

(Dkt. #32, App'x B at p. 6; Dkt. #40 at p. 9; Dkt. #46 at p. 5; Dkt. #48 at Exhibit A).

### 1. The Parties' Positions

Plaintiff argues that, like the other disclosed layers, "[b]atting, too, should be construed as a layer of a footwear and not as a specific type of material that is never referenced within the intrinsic record of the '038 Patent." (Dkt. #40 at p. 9). Plaintiff urges that "[t]he intrinsic record of the '038 Patent repeatedly defines batting by its functionality within the footwear, and it does

so without ever defining or otherwise imposing limitations on its physical composition." (Dkt. #40 at p. 9). Plaintiff also cites prosecution history (Dkt. #40 at pp. 10, 13). Finally, Plaintiff argues that Defendant's proposal "would exclude preferred embodiments from the scope of the claims" and, moreover, "'wadding' itself is not a commonly understood term." (Dkt. #40 at p. 14).

Defendant responds that "[t]he plain and ordinary meaning of 'batting' to one of skill in the art is fiber wadding," and "this construction is supported by both the intrinsic record and extrinsic evidence." (Dkt. #46 at p. 5). For example, Defendant argues that because Claims 1 and 11 of the '038 Patent recite "the batting being light diffusing," Plaintiff's proposal would improperly render claim language superfluous (Dkt. #46 at p. 5). Defendant also submits that "the provisional application to the Asserted Patents that Firebug claims priority to expressly equates 'batting' with 'fiber fill.'" (Dkt. #46 at p. 6). Further, Defendant cites dictionary definitions as well as statements by the named inventor (Dkt. #46 at pp. 8–9).

Plaintiff replies that "Defendants fail to identify any intrinsic or extrinsic evidence that supports their proposed 'fiber wadding' construction." (Dkt. #47 at p. 6). Plaintiff also argues that "[w]hile batting and fiber fill can both be used to achieve a first layer of light diffusion, it does not follow that batting is the same as fiber fill." (Dkt. #47 at p. 7). Further, Plaintiff submits that "even Defendants' own extrinsic evidence fails to support its proposed construction." (Dkt. #47 at p. 8). Finally, Plaintiff argues that "[t]he prosecution history of the '038 Patent confirms both the applicant and the examiner intended and understood the term 'batting' to refer to a layer within a footwear and not to a specific material with specific physical features." (Dkt. #47 at p. 9).

At the December 1, 2017 hearing, the parties presented oral arguments, such as noted herein. Also, Plaintiff alternatively suggested that "batting" could be construed as a "layer of the footwear" or a "first layer of the footwear." Plaintiff highlighted that the parties' agreed-upon

constructions for "liner" and "upper" refer to "layers." (*See* Dkt. #32 at App'x A). Nonetheless, Plaintiff was amenable to construing "batting" as "padding" so long as not limited to any particular type of material. Defendant responded that the term "batting" necessarily refers to fiber, and Defendant suggested that the term could alternatively be construed as "fiber padding."

In a supplemental brief filed by Defendant after the hearing,[1] Defendant further argued that 37 C.F.R. § 1.57 demonstrates that the provisional patent application is intrinsic evidence because "an incorporation by reference is . . . present if the applicant filed an 'application data sheet' containing a claim of priority to the provisional patent application," as Defendant submits occurred here (Dkt. #55 at p. 2).

**2. Analysis**

Claim 1 of the '038 Patent recites (emphasis added):

1. An internally illuminated textile footwear comprises:
   a footwear;
   the footwear comprises a sole and an upper;
   an illumination system;
   the illumination system comprises a power source and a plurality of illumination sources;
   a liner;
   a structure;
   the structure comprises an interfacing layer and a *batting*;
   the structure being adjacently connected to the upper;
   the structure being positioned between the liner and the upper;
   the interfacing layer being positioned adjacent to the liner;
   the *batting* being adjacently connected to the interfacing layer opposite the liner;
   the interfacing layer being reflective;
   the *batting* being light diffusing;
   the plurality of illumination sources being adjacently connected to the interfacing layer;
   the plurality of illumination sources being positioned between the interfacing layer and the *batting*;
   the upper being perimetrically connected to the sole;

---

[1] At the December 1, 2017 hearing, the Court permitted the parties to file, within one week of the hearing, supplemental briefs addressing whether the provisional patent application is intrinsic evidence or extrinsic evidence. Defendant filed a supplemental brief (Dkt. #55). Plaintiff did not file a supplemental brief.

the liner being positioned interior to the upper;

the upper being light diffusing;

the illumination system being housed within the footwear;

the plurality of illumination sources emitting light, wherein the light first entering the *batting* and being diffused by the *batting*, the light diffused by *batting* exits the *batting*, enters the upper, diffused again by the upper and then exits the upper, the twice diffused light creating a visual impression of internal radiant illumination across an outer surface area of the upper.

The Abstract of the '038 Patent states that the "batting is designed to be light diffusing." Likewise, the specification discloses that the "batting 10" "serves as a first layer of light diffusion, distributing light over a larger area of batting 10, before the light 61 exits the batting 10 and into the diffusing section 41 of the upper 4." '038 Patent at 3:5–8. The Figures, also, do not appear to illustrate any distinct physical properties of the "batting 10." *See* '038 Patent at Figs. 5A, 5B, 6B, 6C, 6D & 6E. Further, the specification does not limit the dimensions of the "batting 10," instead explaining that "[t]he size of the interfacing layer 9 and batting 10 is variable, such that it can encompass the entire area of the upper 4 or be scaled down to form a small panel in the vicinity of the illumination sources 6. . . ." '038 Patent at 3:16–20.

Nonetheless, because the above-reproduced claim already recites "the batting being light diffusing," Plaintiff's proposal of "a layer that diffuses light" would render surrounding claim language superfluous. Admittedly, as a general matter, redundancy in a construction is not prohibited. *See 01 Communique Lab., Inc. v. LogMeIn, Inc.*, 687 F.3d 1292, 1296 (Fed. Cir. 2012) (noting absence of "any authority for the proposition that construction of a particular claim term may not incorporate claim language circumscribing the meaning of the term").

Still, "[a] claim construction that gives meaning to all the terms of the claim is preferred over one that does not do so." *Merck & Co. v. Teva Pharm. USA, Inc.*, 395 F.3d 1364, 1372 (Fed. Cir. 2005); *accord Apple, Inc. v. Ameranth, Inc.*, 842 F.3d 1229, 1237 (Fed. Cir. 2016)

("Construing a claim term to include features of that term already recited in the claims would make those expressly recited features redundant.").

The prosecution history reinforces that the word "batting" has meaning apart from merely being light diffusing. In distinguishing the Doerer reference, the patentee stated:

> . . . Doerer fails to disclose an upper 14, which is comprised of a multilayer construction consisting of a liner, a upper and a structure, the structure of which consists of a interfacing layer and a *light defusing* [*sic*, diffusing] *batting*, by which the illumination source is positioned internally (i.e. concealed) between the interfacing layer and *light defusing* [*sic*, diffusing] *batting* while being directly connected to the interfacing layer.

(Dkt. #40, Exhibit D, Aug. 1, 2014 Amendments at p. 20 (p. 58 of 149 of Exhibit D)). These references to "light defusing [*sic*, diffusing] batting" suggest that not all "batting" is necessarily light diffusing. *See Phillips*, 415 F.3d at 1314 (stating "the claim in this case refers to 'steel baffles,' which strongly implies that the term 'baffles' does not inherently mean objects made of steel").

Likewise, the specification discloses that "the batting 10 *serves as* a first layer of light diffusion." '038 Patent at 3:5–6 (emphasis added). This weighs against Plaintiff's proposal of defining "batting" in terms of diffusing light rather than as a type of structure that may *serve* to diffuse light. Moreover, in the provisional patent application to which the '038 Patent claims priority,[2] the patentee stated:

> The liner forms the inner surface of the boot shaft which comes in contact with a person's leg. With the plurality of illumination sources attached to the boot's lining, padding may then be applied. *This padding sometimes referred to as batting or fiber fill may be used to achieve a first layer in the diffusion of light.* Applied over this alternative padding is the final textile material, which serves as at least, a portion of the boot's outer surface, commonly referred to as the "upper".

---

[2] The parties appear to agree that Exhibit D to Defendant's response brief (Dkt. #46) is the provisional patent application to which the '038 Patent claims priority. (*See* Dkt. #46 at p. 6; *see also* Dkt. #47 at p. 7, n.11).

(Dkt. #46, Ex. D at p. 3, ll. 1–6 (emphasis added)).  This passage refers to "batting" in the context of "diffusion of light," which thus aligns with the context in which "batting" is used in above-reproduced Claim 1 of the '038 Patent.

This disclosure that "padding" is "sometimes referred to as batting or fiber fill" amounts to a statement by the patentee that "batting" is "padding,"[3] and this statement is of significant weight.  *See* (Dkt. #46, Ex. D at p. 3, ll. 1–6); *see also Chicago Mercantile Exch., Inc. v. Tech. Research Grp., LLC*, 721 F. Supp. 2d 785, 793 (N.D. Ill. 2010) (finding the "provisional application is part of the complete record of the proceedings before the USPTO leading to the issuance of the . . . patent, and is thus properly considered part of its prosecution history.") (citing *Phillips*, 415 F.3d at 1317 ("The prosecution history, which we have designated as part of the 'intrinsic evidence,' consists of the complete record of the proceedings before the PTO.")); *cf.* 37 C.F.R. § 1.57 (stating "if all or a portion of the specification or drawing(s) is inadvertently omitted from an application, but the application contains . . . a claim under § 1.78 for the benefit of a prior-filed provisional . . . application . . . and the inadvertently omitted portion of the specification or drawing(s) is completely contained in the prior-filed application, the claim under § . . . 1.78 shall also be considered an incorporation by reference of the prior-filed application as to the inadvertently omitted portion of the specification or drawing(s).").

At least one authority has found that, in the absence of explicit incorporation by reference or consideration by the examiner, a provisional patent application may merely be extrinsic evidence.  *See dunnhumby USA, LLC v. emnos USA Corp.*, No. 13-CV-0399, 2015 WL 1542365, at *8–*11 (N.D. Ill. Apr. 1, 2015) (collecting cases).  But regardless of whether the provisional

---

[3] The opinion of Defendant's expert is also persuasive in this regard.  (*See* Dkt. #46, Exhibit C, Nov. 10, 2017 Holden Decl. at ¶ 15).

patent application is deemed to be intrinsic or extrinsic, the provisional patent application can be considered as evidence that the term "batting" refers to padding.  *See id.*

This evidence is also consistent with extrinsic definitions submitted by Defendant, such as a general-purpose dictionary that defines "batting" as "cotton wadding prepared in sheets for use in quilts."  (Dkt. #46, Exhibit G, *The New American Oxford Dictionary* 139 (2001); *see Phillips*, 415 F.3d at 1322 (holding "[d]ictionaries or comparable sources are often useful to assist in understanding the commonly understood meaning of words . . . .")).  As Plaintiff has noted, this reference to "cotton wadding" appears to be a specific example, particularly in light of the reference to it being "for use in quilts," but this example is consistent with "batting" referring to "padding."

Defendant has also submitted a manufacturing-related document in which the named inventor referred to a sample of material "called 'batting' or 'padding,'" noting that "[t]his material is used for pillows and stuffed animals" and that "the batting will be used to defuse [*sic*, diffuse] light."  (Dkt. #46, Exhibit F at p. 9 (FIREBUG000681)).  The patentee further appeared to use the words "batting" and "padding" as synonyms:

> [A]s you should find in your own testing of a test panel, you should need to apply a layer of *batting/padding*, over the LEDs, cover just about the entire side of the boot shaft.  This *batting/padding* will first defuse [*sic*, diffuse] the light, spreading the light over a larger area of the pink fur boot shaft, thus maximizing the internally illuminated pink fur.  The reason why you want to use a large "panel" of *batting/padding*, is to properly achieve this distribution of light over a larger area of the pink fur.

(Dkt. #46, Exhibit F at p. 12 (FIREBUG000684) (emphasis added)).[4]

---

[4] Also of note here, this evidence cited by Defendant uses the word "batting" together with "padding" but does not use the phrase "fiber wadding" that Defendant has proposed as a construction.

Defendant has similarly submitted a Treasury Decision dated March 5, 1964, that defines "batting" as "padding":

> . . . Batting, textile.—*Padding* either wholly of the unspun fibers of henequen or of waste henequen fibers, and up to 10% of coconut fiber, used in bed mattresses, rug padding, and furniture padding . . . .

(Dkt. #46, Exhibit H, 1964 WL 10557, at *2 (emphasis added)).  Although extrinsic evidence, and although this definition appears to relate only to specific types of fibers, this definition of "batting" as "padding" is notable.  *See Phillips*, 415 F.3d at 1319 (reasoning "because extrinsic evidence can help educate the court regarding the field of the invention and can help the court determine what a person of ordinary skill in the art would understand claim terms to mean, it is permissible for the district court in its sound discretion to admit and use such evidence").[5]  And although this definition refers to "fibers," the discussion of specific fibers in the context of the apparently broader term "padding" suggests that Defendant's proposal of "fiber wadding" is too narrow.

Also, although Claim 2 of the '038 Patent adds many other limitations, it is noteworthy that Claim 2 depends from Claim 1 and recites that "the structure further comprises a *light diffusing layer*," which thus implies that the "light diffusing" "batting" recited in Claim 1 is something different.  *See Innova/Pure Water*, 381 F.3d at 1120 (stating that "when an applicant uses different terms in a claim it is permissible to infer that he intended his choice of different terms to reflect a

---

[5] Defendant has cited a declaration in which the named inventor referred to a Treasury Decision as "accepted in the shoe industry/business."  (Dkt. #46, Exhibit 1, Nov. 4, 2013 Declaration Under 37 CFR 1.132 (U.S. Patent Appl. No. 12/350,950) at ¶¶ 7–8).  Defendant also submits that the named inventor has stated that "the industry refers to shoes using terms as defined by the U.S. Customs Service, in fact, 'footwear importers are required to abide by Customs terminology' . . . ."  (Dkt. #46 at p. 8 (quoting *id.*, Ex. J, Aug. 5, 2013 Response to Final Office Action (U.S. Patent Appl. No. 12/350,950) at p. 6) (emphasis omitted)).  These statements, however, evidently related to an application other than for the patents-in-suit.  Defendant has cited *Microsoft Corp. v. Multi-Tech Systems, Inc.* for the proposition that, in Defendant's words, "patent-owner's statements in separate prosecution history was pertinent to construction of patent-owner's other patents."  (Dkt. #46 at p. 8 (citing 357 F.3d 1340, 1349 (Fed. Cir. 2004)).  A better reading of *Microsoft*, however, is that a patentee's statements as to one patent may be considered as to *related* patents.  357 F.3d 1340, 1349–50.  No such relation has been shown here.  Thus, the cited statements, as well as the Treasury Decision definition submitted by Defendant, are extrinsic evidence.

differentiation in the meaning of those terms"); *see also Forest Labs., Inc. v. Abbott Labs.*, 239 F.3d 1305, 1310 (Fed. Cir. 2001) (holding "[w]here claims use different terms, those differences are presumed to reflect a difference in the scope of the claims."). The recital of a "light diffusing layer" distinct from "batting" thus reinforces the other above-discussed evidence that weighs against Plaintiff's proposal that "batting" means "a layer that diffuses light." The specification further reinforces this distinction. *See* '038 Patent at 5:33–37 ("the light diffusing layer 12, similar to the batting 10, serves to diffuse light . . .").

Further, although Plaintiff has noted that the specification refers to the claimed invention as "footwear" and then refers to "footwear" as including "sandals,"[6] this passing reference to sandals does not override the above-discussed evidence that "batting" is padding.

Finally, at the December 1, 2017 hearing, Plaintiff expressed concern that construing "batting" as "padding" might give rise to uncertainty as to how much of a material is required so as to constitute "padding." On balance, any such question of degree is a question of fact for the finder of fact rather than a question of law for claim construction. *See Acumed LLC v. Stryker Corp.*, 483 F.3d 800, 806 (Fed. Cir. 2007) ("[A] sound claim construction need not always purge every shred of ambiguity. The resolution of some line-drawing problems . . . is properly left to the trier of fact.") (citing *PPG Indus. v. Guardian Indus. Corp.*, 156 F.3d 1351, 1355 (Fed. Cir. 1998) ("after the court has defined the claim with whatever specificity and precision is warranted by the language of the claim and the evidence bearing on the proper construction, the task of determining whether the construed claim reads on the accused product is for the finder of fact")); *Eon Corp. IP*

---

[6] *See* '038 Patent at 2:42–44 ("The present invention is an internally illuminated footwear . . . ."); *see also* '038 Patent at 7:2–4 ("The boot shaft provides extra space that is not available in athletic shoes, sandals, and similar types of footwear."). Plaintiff argues that "it is difficult to imagine how sandals could be stuffed with fiber wadding as Defendants propose." (Dkt. #40 at p. 15).

*Holdings LLC v. Silver Spring Networks, Inc.*, 815 F.3d 1314, 1318–19 (Fed. Cir. 2016) (citations omitted).

The Court thus concludes that "batting" is not merely a "layer" that performs a particular function but rather is a category of structures known in the relevant art as "padding." *Cf. Greenberg v. Ethicon Endo-Surgery, Inc.*, 91 F.3d 1580, 1583 (Fed. Cir. 1996) (stating "[m]any devices take their names from the functions they perform. The examples are innumerable, such as 'filter,' 'brake,' 'clamp,' 'screwdriver,' or 'lock.' . . . Dictionary definitions make clear that the noun 'detent' denotes a type of device with a generally understood meaning in the mechanical arts, even though the definitions are expressed in functional terms.").

Based on the foregoing evidence, particularly the context of the claims as well as the prosecution history, as reinforced by extrinsic evidence, the Court hereby construes **"batting"** to mean **"padding."**

## CONCLUSION

The Court adopts the constructions set forth in this opinion for the disputed terms of the patents-in-suit. The parties are ordered that they may not refer, directly or indirectly, to each other's claim construction positions in the presence of the jury. Likewise, the parties are ordered to refrain from mentioning any portion of this opinion, other than the actual definitions adopted by the Court, in the presence of the jury. Any reference to claim construction proceedings is limited to informing the jury of the definitions adopted by the Court.

**SIGNED this 15th day of December, 2017.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE